UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TINISIA VENABLE, Individually
and on Behalf of All Others
Similarly Situated;                                    Case No.:

      Plaintiff,

v.

J.W. LOGISTICS, LLC,
                               COLLECTIVE ACTION
                               REPRESENTATION

      Defendant.
_____/

## FLSA COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **TINISIA VENABLE,** individually (collectively referred to herein as "Plaintiff"), and on behalf of all others similarly situated, who consent to their inclusion in this collective action (hereinafter the "Putative Class"), sues the above captioned Defendant, **J.W. LOGISTICS, LLC.**, individually and on behalf of all others similarly situated pursuant to *29 U.S.C. §216(b)*, the Fair Labor Standards Act (the "FLSA"), for failing to pay Plaintiff and the Putative Class overtime wages and in support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over claims under the FLSA pursuant to 29 U.S.C. §216 (b), which states, in relevant part, "[a]n action to recover… may be maintained … in any Federal or State court of competent jurisdiction."

2.     This Court has personal jurisdiction over this action, because Defendant is engaged in business throughout the state of Georgia and operates substantial business in Cobb County,

Georgia through its work at Amazon warehouse located at 4800 Highland Parkway SE, Smyrna, Georgia 30082.  Additionally, the damages at issue occurred in Cobb County, Georgia.

3.      Venue is proper to this Court pursuant to 29 U.S.C. § 216(b), because the acts complained of herein took place in Cobb County at Defendant's place of business located at 4800 Highland Parkway SE, Smyrna Georgia 30082.

4.      Defendant is engaged in interstate commerce and also upon information and belief has revenues of over $500,000 annually such that it is subject to the FLSA and Plaintiff is entitled to the protections of the FLSA.

## THE PARTIES

5.      Defendant, J.W. LOGISTICS, LLC (hereinafter "JW"), is a foreign for profit Corporation with its principle place of business at 3801 Parkwood Blvd, Ste 500, Frisco, TX, 75034.

6.      JW's registered agent for service of process in the State of Georgia is: CAPITOL CORPORATE SERVICES, INC. at 3675 Crestwood Parkway, N.W., Suite 350, Gwinnett, Duluth, GA, 30096.

7.      JW is an employer subject to the FLSA.

## REPRESENTATIVE PLAINTIFF

8.      At all times relevant to this action, Representative Plaintiff, Tinisia Venable (hereinafter "Plaintiff" or "Venable"), resided in Lawrenceville, Georgia.

9.      At all times relevant to this action, Venable was employed by JW.

10.     Plaintiff was employed by Defendant from approximately August 2016 until August 3, 2017 as a "Dispatcher" but in May 2017 she was also given a title of supervisor in addition to dispatcher.

11.     Venable was hired first as an hourly employee, and had no experience as a dispatcher.

12.     Plaintiff, and all other members of the proposed collective action, were or are employees of JW Logistics LLC within the meaning of 29 U.S.C §203(e)(1).

13.     Plaintiff was improperly classified (a/k/a "misclassified") by Defendant as an exempt employee under the FLSA.  However, Plaintiff's work duties and responsibilities dictate that she should have been classified and compensated as a non-exempt employee under the FLSA.

14.     Throughout the course of her employment by JW, Plaintiff was always denied overtime compensation even though she routinely worked over forty (40) hours in a workweek, and upwards of thirty (30) hours or more of overtime routinely.

15.     For purposes of the Class, Plaintiff consents in writing to be a party to this action pursuant to 29 U.S.C. §216(b).

16.     At all times relevant to this action, Representative Plaintiff, Tinisia Venable worked from an Amazon warehouse located at 4800 Highland Parkway, SE, Smyrna, Georgia and reported to this location as well as to the Corporate office in Frisco Texas throughout her employment.

17.     At all times relevant to this action, Plaintiff was employed by JW as a W-2 employee.  However, she worked from August 2016 until December 2016 as an hourly, non-exempt dispatcher.

18.     Plaintiff was employed by Defendant from approximately August, 2016 until August 3, 2017 as a "Dispatcher"; although in May, 2017 Defendant may have assigned Plaintiff the title of supervisor even though her job duties and responsibilities did not materially change and she spent the overwhelming majority of her time performing the same job duties and responsibilities as she performed as a dispatcher.

19.     Plaintiff was first hired as an hourly employee and was working until December, 2016 being paid hourly and being paid overtime wages.

20.     However, as she was working even upwards of approximately 179 hours in a two-week period, and incurring substantial overtime each week, Defendant converted her to a salaried, exempt status although there was no change in her position, job duties or requirements.

21.     Plaintiff essentially trained herself in the first day or days of working.  There was a one-hour AMAZON training course, but otherwise JW nor Amazon provided any courses, manuals or guides on how to perform the role of a dispatcher.

22.     JW was one of between four and seven other companies servicing Amazon's package delivery requirements from the same AMAZON warehouse, which shipped and delivered packaged throughout the Atlanta area.

23.     Plaintiff, and all other members of the putative class of similarly situated, were or are now still, employees of JW within the meaning of 29 U.S.C §203(e)(1).

24.     Plaintiff was improperly classified by JW as an exempt employee (excluded from receiving overtime wages), as Plaintiff's actual work duties and responsibilities dictate that she should have been classified and compensated for overtime wages as a non-exempt employee under the FLSA.

25.     Throughout the course of her employment by JW, Plaintiff was always denied overtime compensation even though she routinely worked every week, and such overtime was expected by Defendant of Plaintiff and all other dispatchers.

26.     For purposes of the Class, Plaintiff consents in writing to be a party to this action pursuant to 29 U.S.C. §216(b).

## THE CLASS

27.     The class is brought as a collective action to recover from JW overtime compensation, liquidated damages, and the costs of reasonable attorney's fees under 29 U.S.C. §216(b), on behalf of the Plaintiff and similarly situated persons composed of:

> a.     All persons employed by J.W. LOGISTICS, LLC, or its subsidiaries or affiliated companies, under the title of DISPATCHER OR DISPATCHER/SUPERVISOR, or any other title used to describe the same position, in the **three (3)** years preceding the filing of this lawsuit, or who are currently employed in this capacity anywhere in the United States and its territories, and who elect to opt-in to this action pursuant to FLSA, 29 U.S.C. §216.

28.     In the course of her employment with JW, Plaintiff, and other employees in the Putative Class, regularly worked in excess of forty (40) hours per workweek and were not paid overtime compensation at the lawful overtime rate for all of the overtime hours worked, based on Defendant's custom and practice of misclassifying employees as exempt employees.

29.     Plaintiff alleges on behalf of herself and the Putative Class that they are entitled to be paid a premium for all overtime hours worked for which they did not receive overtime compensation, as required by the FLSA.

**GENERAL ALLEGATIONS**

30.     JW had a common pay practice and policy of denying its "Dispatchers" overtime pay for hours worked in excess of forty (40) hours per workweek and classifying the position as exempt from overtime wages, regardless of geographic location.

31.     At all material times, JW required its Dispatchers to work in excess of forty (40) hours a week, misclassifying the Putative Class as exempt employees on a uniform basis, without regard to any individualized analysis of the work performed.

32.     Upon information and belief, for the three-year period of time before this filing, (the "Class Period"), the violations of the FLSA §207 that are complained of herein have been practiced and imposed upon all Dispatchers, who regularly worked in excess of forty hours per week and continue into the future.

33.     Plaintiff and the Putative Class are not considered exempt because "[a] job title alone is insufficient to establish the exempt status of any particular employee … [but rather] [t]he exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."  29 C.F.R. § 541.2.

34.     Other dispatchers from other locations, specifically Texas, have posted on the web comments such as "To be successful in this position you will be expected to work 80-plus hours a week…"; and "…and if you did not work 80-plus hours per week you were viewed as undedicated and forced to resign."

35.     Defendant knew that the Dispatch position required these kinds of hours, and willfully misclassified the position as exempt solely to save hundreds of thousands of dollars each

month or more, and ultimately millions of dollars in labor costs for this position each year.  Said differently, by treating employees who were working upwards of 80 hours a week as salaried exempt employees and foregoing paying overtime wages at time and one half their regular rates of pay, the Defendant saved nearly the same amount it was paying dispatchers in labor costs.

36.     The Dispatcher position did not require any prior dispatch experience nor any specialized training, and one dispatcher in one state could without any geographic or other specialized training perform the job in another location.

37.     In fact, Plaintiff and another dispatcher she worked with both did not have any prior experience as dispatchers, and were taught the position without any formal training, training manuals or guides, videos or lectures in a matter of a day or days.

38.     JW did not provide any training program, training guides or manuals for the position as the requirements were simple and easy to pick up, and easily learned in a few days.

39.     AMAZON provided the dispatchers with laptop computers, and cell phones or "rabbits" which through a program called Routing Tools, believe to be proprietary to Amazon, tracked the drivers' whereabouts through GPS and appeared on a map or grid for the Dispatcher to monitor.

40.     AMAZON also delegated the routes to JW by an email, and the dispatchers would simply plug in and input the names of the drivers for each route and the company name into the Route Tool program and then hand to each driver the Rabbit or cell phone and away the drivers would go after the packages were all loaded into vans.

41.     No decisions were necessary as to the types or size of vans, as JW had essentially one Mercedes van for all drivers.

42.     Plaintiff performed non-exempt duties such as assist drivers in the mornings with loading packages onto the vans, making sure each van had hand trucks, making sure the Rabbits were working, making sure the drivers had their gas cards.

43.     Plaintiff also had to simply determine which drivers had clocked in the morning.

44.     Amazon created the routes and provided for 10-hour driver shifts and also selected the launch or start times for the drivers.

45.     Dispatchers were required to work until all the drivers were back at the warehouse, and then had to perform more manual labor and non-exempt duties of scanning and logging in packages that did not get delivered and data entry.

46.     At the Amazon warehouse, upwards of four to seven different companies also ran deliveries for Amazon and handles routes, and had dispatchers working side by side with JW dispatchers, the difference being that other dispatchers from the competitors were paid by the hour and treated as non-exempt employees.

## COLLECTIVE ACTION ALLEGAGTIONS
## AND THE DISPUTE OF EXEMPTIONS

47.     Plaintiff and other similarly situated members of the Putative Class, were titled as Dispatchers.   Plaintiff, and all other similarly situated members of the Putative Class of Dispatchers, were not given any real discretion to make any independent decisions related to binding the company, signing contracts, or creating policies or procedures or disciplining employees.

48.     Plaintiff did not make any decisions on hiring or firing, and aside from being told to interview pre-selected job candidates, any verbal recommendation as to whether to hire the candidate were ignored and given little if any weight.

49.     While Plaintiff kept track of the comings and goings of the drivers and reported incidents of drivers not doing their jobs, she did not conduct formal job reviews or evaluations.

50.     The Defendant will likely argue to no avail that the Plaintiff and members of the Putative Class of dispatcher are exempt under the administrative and executive exemptions.

51.     However, under the FLSA, an executive employee is defined as an employee "who has the authority to hire or fire other employees or whose suggestion and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight."  29 C.F.R. §541.100(a).

52.     Plaintiff, and similarly situated dispatchers do not qualify for the executive exemption because they did not have the authority to hire or fire other employees, and fail the short test as they did not supervise two or more full time employees or the equivalent.

53.     The dispatcher's job was to make sure packages were properly being picked up and delivered and routes were covered, and the job was not about assessing or scrutinizing the job performance of the drivers.

54.     Plaintiff and other dispatchers did not formally discipline drivers, and merely reported their actions and conduct to superiors or human resources, who made decisions on disciplinary actions.

55.     Amazon held meetings every two hours, pulling up on a large TV screen the GPS tracking of the drivers and other data, and where drivers were off schedule or behind, commanded that the JW dispatchers take actions to get rescue drivers out to assist with the deliveries.

56.     The work of the dispatcher was in production, monitoring delivery drivers, verifying they were loaded and ready to go and checking in all the undelivered packages, as well as putting names of the drivers on the routes assigned by AMAZON.

57.     Under the FLSA, an administrative employee is defined as an employee who has "discretion and independent judgment with respect to matters of significance." 29 C.F.R.§541.200. In order to possess such discretion the employee must have the authority to make "independent choice[s], free from immediate direction or supervision…even if their decisions or recommendations are reviewed at a higher level."  29 C.F.R. §541.202(c).

58.     Plaintiff and similarly situated dispatchers do not qualify for the administrative exemption because they were not allowed to hire, fire, mentor, or discipline any employees, and their primary job duty did not involve the exercise and discretion of independent judgment in matters of significance; alternatively they were involved in "production":  the delivery of the packages to customers on behalf of Amazon or other companies.

59.     Further, Dispatchers are not "managers" within the meanings and factors of the FLSA and related CFR regulations, as they did not "manage" other employees, departments, or any divisions.

60.     Dispatchers work as route monitors and schedulers with the primary duty involving routines and adherence to policies and procedures from manuals and guides.

61.     While everyone, including a grocery bagger has some level of discretion on how to carry out their day to day job duties, people are not robots and Plaintiff and all dispatchers had some limited ability to decide how to run their day and perform their standardized and routine job duties and responsibilities.

62.     In other words, the job duties and responsibilities, or requirements of the job of a dispatcher were standardized for all dispatchers, and they monitored the whereabouts and actions of the drivers using standardized computer programs.

63.     The dispatcher role did not require any special education or training, and no college degree was required.

64.     Any job interviews conducted were pre-selected and preset by the HR department, and even when plaintiff as a supervisor conducted an interview, her recommendation was ignored.

65.     The limited discretion dispatchers had related to production, and not matters of significance or company policies and procedures; Dispatchers did not sign contracts or bind the company to contracts or commitments.

66.     Plaintiff as a dispatcher did not determine the numbers of drivers the company needed or to hire more or reduced the numbers, and was not involved with any negotiations or discussions on compensation for drivers.

67.     Accordingly, Plaintiff and members of the Class of "Dispatchers" are not exempt from the requirements of overtime, minimum wage, or FLSA.

68.     Plaintiff alleges on behalf of herself and the Class of "DISPATCHERS" that JW'S failure to pay overtime compensation was knowing and willful.  Accordingly, Plaintiff and the Class are entitled to recover all overtime pay due from overtime hours worked for which

compensation was not paid, liquidated damages and attorneys' fees under the FLSA's three year statute of limitations.

69.     Even when Plaintiff was subsequently given the role or title as "supervisor", sometime in May, 2017, her primary job duty remained working as a dispatcher, and she was not given the discretion or authority to hire, fire or discipline other dispatchers, and any discretion she had was temporary while defendant was seeking to fill roles or area managers and operations managers.

70.     After the addition of the title as supervisor she maintained her employment status in the company payroll and on the schedule as a dispatcher, and spent upwards of 95% or more of her time working as a dispatcher, and her dispatching duties and responsibilities were not lessened and required her still to work over 40 hours just to fulfill the dispatcher duties and responsibilities.

71.     Plaintiff brings this action on behalf of the Class as a collective action pursuant to the Fair Labor Standards Act § 216(b).

72.     The members of the Putative Class are so numerous that joinder of all members is impracticable.  The exact number of the members of the Class is unknown to the Plaintiff at this time, and can only be ascertained through appropriate discovery.

73.     Upon information and belief there are approximately 150 Dispatchers from Defendant's approximately 48 locations, including several in Georgia, and given turnover in the past three years, the estimated putative class is approximately one hundred and 300 persons.

74.     JW provides delivery services AMAZON, and other companies such as Home Depot, and upon information and belief at reduced rates that companies such as UPS or FEDERAL EXPRESS would charge.

75.     Plaintiff will fairly and adequately protect the interests of the Putative Class and have retained counsel that is experienced and competent in class action and employment litigation. Plaintiff has no interest that is contrary to, or in conflict with, members of the Putative Class.

76.     Pursuant to 29 U.S.C. § 207, Plaintiff seeks to prosecute the FLSA claims as a collective action on behalf of:

> **All persons, who are presently employed, or who were previously employed as Dispatchers, or under any other title used to describe this same position by JW LOGISTICS LLC in the three years preceding this lawsuit throughout the U.S. and its territories, and who consent to inclusion in this collective action.**

77.     Notice of the pendency and any resolution of this action should be provided to Putative Class Members by email, U.S. Mail, text message and by web publication.

78.     The role of the dispatcher does not equate to supervising 2 or more full time employees as required under the executive exemption, and the Dispatcher was not given the discretion and authority to evaluate their job performance, conduct reviews or make the decisions on disciplinary actions, hiring or firing.

79.     Plaintiff and other dispatchers had little direct communication with Amazon, and was not involved with business meetings with AMAZON to discuss its needs.

80.     The primary job duty was to satisfy AMAZON's service needs to deliver packages, a task more in the line of production than in management of the company.   Venable performed **duties** closer to "working on a manufacturing production line," or "selling a product in a . . . service establishment" because she was working toward fulfilling a customer's need for a

service, than to performing administrative **duties**, which generally do not involve customers but rather the day-to-day operations of the business.

81.     Additionally, the decisions made by Plaintiff did not involve matters of significance for the company as those terms are used in the FLSA and CFR, as she did not sign contracts, or make decisions or recommendations for the company and its policies and corporate business.

82.     Plaintiff and the similarly situated Dispatchers, did not come up with solutions or solve problems, or come up with new shipping systems, procedures or methods for AMAZON.

83.     Throughout Plaintiff's employment, Defendant did not track and record the work hours of dispatchers, and as such, the Plaintiff's estimation of the hours worked will satisfy her evidentiary requirements and the Defendant has the burden to disprove the hours claimed.

84.     Plaintiff, and all other dispatchers upon information and belief were paid a salary and subjected to a common pay practice by JW as being treated as exempt without being paid a premium for overtime hours.

85.     Defendant knew, and knows today, that the role of the Dispatcher requires routine overtime hours and that Plaintiff and other dispatchers in her location were working substantially greater hours than 40.

86.     Defendant even classified Plaintiff as non-exempt for months of time performing the dispatcher position, and only changed her to salary after incurring substantial overtime hours and overtime wages, reclassifying her to exempt without explanation or justification of any alleged exemption they were applying or claiming.

87.     Further, Plaintiff and other dispatchers in her location also had to work on their days off answering phone calls and emails and handling scheduling issues of drivers to fulfill their job requirements, actions and work which Defendant knew or should have known of.

## COUNT I – OVERTIME WAGES DUE UNDER THE FLSA

88.     The Plaintiff re-adopts and re-alleges the allegations set forth in paragraphs one (1) through Eighty Seven (87) as if fully set forth herein, and further alleges:

89.     Plaintiff brings this FLSA claim on behalf of herself and all other similarly situated workers comprised of all current and/or former employees of JW LOGISTICS LLC, including all subsidiaries and affiliated companies, who work or have worked as Dispatchers, or other job titles used by JW to describe the same position, at any time in the three (3) years preceding the filing of this complaint.

90.     At all relevant times, JW has been and continues to be an employer engaged in commerce and/or the productions of goods for commerce within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

91.     At all relevant times, JW employed Plaintiff and the Putative Class within the meaning of the FLSA.

92.     At all relevant times, Plaintiff and the Putative Class regularly worked overtime, with the behest, encouragement, knowledge and expectations of Defendant.

93.     As stated herein, JW has a common policy and practice of refusing to pay overtime compensation for employees in the dispatcher or dispatch position for the hours worked in excess of forty (40) hours per workweek, regardless of the actual job duties performed or any

individualized variances by each employee in carrying out their day to day standardized and uniform job requirements.

94.     JW failed to compensate Plaintiff and the Putative Class for overtime hours they regularly worked without explanation of the reasons or the exemption claimed to be applicable.

95.     JW's failure to pay Plaintiff and the Putative Class overtime compensation or any premium for overtime hours, at a rate not less than one and one-half times their regular rates of pay (or any other premium) for work performed beyond the forty (40) hour work week, was, and remains a willful violation of the FLSA, in particular 29 U.S.C. §§ 206 and 207.

96.     JW has not made a good faith effort to comply with the FLSA and the overtime compensation requirements with respect to Plaintiff and the Putative Class.  JW's violations of the FLSA are willful and deliberate, and upon intended to save the Defendant millions of dollars in labor costs at the expense of the Dispatchers.

97.     Upon information and belief, JW never verified, investigated or obtained any legal opinion as to the application of any exemptions under the FLSA for the Dispatcher position; or alternatively, despite knowledge of questions or challenges to the exemption classification, continued to classify the position as exempt.

98.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

99.     The primary job duties and responsibilities for the Dispatcher position do not meet or satisfy the elements of any exemption under the FLSA, as the primary job duty of the Dispatcher position was servicing AMAZON's needs and part of "production", as well as performed pursuant to standardized job duties and requirements from manuals and guides.

100.    The majority and primary job duties of the dispatcher position were well recognized non-exempt job duties.

101.    All decisions on how to service AMAZON's needs were made by upper management, including the size of vehicles or trucks, the number of drivers, costs, and compensation of drivers, hiring, firing, and formalized disciplinary actions.

102.    Dispatchers did not participate in meetings between JW and AMAZON, nor did they create the routes, pick the types and numbers of trucks or vehicles, or handle budgeting.

103.    Due to JW's FLSA violations, Plaintiff and the Putative Class have suffered damages and are entitled to recover from JW the unpaid overtime compensation, and an additional amount equal as liquidated damages, reasonable attorney's fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

104.    Plaintiff and the class of similarly situated should be paid time and one half their regular rates of pay for all overtime hours.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for:

a.   A ruling that JW has violated the FLSA and that the Dispatcher position is non-exempt and fails the exemptions claimed by Defendant;

b.   An order conditionally designating this action as a collective action and approving the issuance of supervised notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to file consents to joint this action to §216(b);

c.   An order appointing Plaintiff and their counsel to represent the Putative Class;

d.  An order enjoining JW from any further violations of the FLSA by refusing to pay Dispatchers overtime wages in the future;

e.  pre-judgment interest;

f.  An order awarding reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

g.  That the Court finds JW has willfully, and with a lack of good faith violated the overtime provisions of the FLSA;

h.  That the Court and apply a three (3) year statute of limitations;

i.  That the Court enjoin Defendant, pursuant to 29 U.S.C. § 217, from withholding future payment of compensation owed to members of the Putative Class;

j.  That the Court award Plaintiff and members of the Putative Class overtime compensation for all the previous hours worked over forty (40) hours in any workweek, during the past three years; liquidated damages of an equal amount of the overtime compensation pursuant to § 216 of the FLSA;

k.  That the Court award Plaintiff a collective action representative service fee for her efforts and time dedicated to bringing justice through this action; AND

l.  That the Court award any other legal and equitable relief as this Court may deem appropriate.


## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated this 24th day of August, 2017.


                                        */s/ Mitchell L. Feldman, Esq.*
                                        MITCHELL L. FELDMAN, ESQUIRE
                                        Georgia Bar No.: 257791
                                        MITCHELL L. FELDMAN, ESQ., P.A.
                                        1201 Peachtree Street, NE
                                        400 Colony Square, #200
                                        Atlanta, GA 30361
                                        Tele: (877) 946-8293
                                        Fax: (813) 639-9376
                                        Email: mlf@feldmanlegal.us
                                        Attorneys for the Representative Plaintiff,
                                        and the Putative Class