# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between Plaintiff, the Consent Plaintiffs, and the Subsequent Class Members, and J.W. Logistics, LLC, and J.W. Logistics Operations, LLC (collectively "J.W. Logistics"), by and through their respective counsel of record, subject to the terms and conditions hereof and the approval of the Court.

## I. RECITALS:

A. WHEREAS, on August 24, 2017, Tinisia Venable filed a Complaint against J.W. Logistics, LLC, alleging that she and those similarly situated to her were not paid in accordance with the Fair Labor Standards Act ("FLSA");

B. WHEREAS, on October 13, 2017, Tinisia Venable amended her Complaint to add J.W. Logistics Operations, LLC, as an additional defendant;

C. WHEREAS, since the filing of the Complaint, 18 or more additional individuals have filed forms whereby they consented to participating in the Lawsuit: Veroveta Alatasi, Monique Artwell, Gary Bard, David Bailey, Terry Berry, Jonathan Castro, Timothy Coles, Chanae Edwards, Marsalis Jayye, Tom LaBrie, Alexander Mallett, Neila Morreale, Raul Pena, Deneen Raveneau, Donna Schaaf, Ron Schad, Greg Weaver, and Tiffany Williams;

D. WHEREAS, the Parties desire to avoid further litigation and to fully and expeditiously settle the Lawsuit, as well as any and all wage-and-hour claims that the Consent Plaintiffs and the Subsequent Class Members have or may have had against J.W. Logistics arising out of or relating to their employment with one or more of the Employers;

E. WHEREAS, the Parties have been able to reach an agreement to settle the claims on the terms contained herein; and

F. WHEREAS, nothing contained herein, nor the consummation of this Settlement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of J.W. Logistics. Each of the Parties hereto has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

NOW, THEREFORE, in consideration of the compensation, mutual agreements, definitions, and covenants contained herein, the Parties agree as follows:

## II. DEFINITIONS

### A. *Lawsuit & Court*

1. **LAWSUIT**: The term "Lawsuit" refers to the action for damages filed on August 24, 2017, with the United States District Court, Northern District of Georgia (Atlanta Division) styled *Tinisia Venable, on behalf of herself and all others similarly situated,*

    *v. J.W. Logistics, LLC, and J.W. Logistics Operations, LLC,* Civil Action No. 1:17-cv-03213-LMM.

2. **COURT:** The term "Court" refers to the U.S. District Court for the Northern District of Georgia, Atlanta Division.

B. *Parties*

1. **PLAINTIFF**: The term "Plaintiff" refers to the named Plaintiff Tinisia Venable. This term is also intended to include her agents, representative, assignees, heirs, executors, beneficiaries, and trustees.

2. **CONSENT PLAINTIFFS:** The term "Consent Plaintiffs" refers to Veroveta Alatasi, Monique Artwell, Gary Bard, David Bailey, Terry Berry, Jonathan Castro, Timothy Coles, Chanae Edwards, Marsalis Jayye, Tom LaBrie, Alexander Mallett, Neila Morreale, Raul Pena, Deneen Raveneau, Donna Schaaf, Ron Schad, Greg Weaver, and Tiffany Williams. This term is also intended to include their agents, representative, assignees, heirs, executors, beneficiaries, and trustees.

3. **EMPLOYERS:** The term "Employers" refers to J.W. Logistics, and any other Employee that is considered an "employer" as that term is defined by the FLSA.

4. **J.W. LOGISTICS:** The term "J.W. Logistics" refers to the Employers, including both J.W. Logistics, LLC, and J.W. Logistics Operations, LLC, as well as to the divisions, subsidiaries, parents, affiliates, partners, members, related entities, predecessors, successors, assigns, trustees, officers, officials, directors, shareholders, employees, agents, joint venturers, former and current insurers, affiliated owners, and attorneys of the corporate Employers, and the agents, representative, partners, assigns, employees, former and current insurers, heirs, executors, beneficiaries, attorneys, and trustees of the individual Employers.

5. **EMPLOYEES**: The term "Employees" refers to all individuals who have been or are now employed by one or more of the Employers.

6. **PUTATIVE SUBSEQUENT CLASS MEMBER:** The term "Putative Subsequent Class Member" refers to any Employee other than Plaintiff and the Consent Plaintiffs who works or worked as a dispatcher, dispatch supervisor, or logistics supervisor, during the Claims Period.

7. **SUBSEQUENT CLASS MEMBER:** The term "Subsequent Class Member" refers to any Putative Subsequent Class Member who submits a Claim Form pursuant to this Agreement within the Opt-In Period.

8. **PLAINTIFFS' COUNSEL:** The term "Plaintiffs' Counsel" refers to Mitchell Feldman and Benjamin Williams of Feldman Williams, PLLC.

9. **J.W. LOGISTICS' COUNSEL:** The term "J.W. Logistics' Counsel" refers to Chad A. Shultz, Esq., and Jeffrey M. Putnam, Esq., of Gordon & Rees Scully Mansukhani LLP.

10. **PARTIES:** The term "Parties" refers to the Plaintiff, Consent Plaintiffs, the Subsequent Class Members, and J.W. Logistics collectively.

C. *Dates & Times*

1. **DATE OF EXECUTION:** The term "Date of Execution" refers to the date on which the last Plaintiff executes this Agreement.

2. **EFFECTIVE DATE:** The "Effective Date" refers to the date that the Settlement has been approved by the Court.

3. **CLAIMS PERIOD:** The "Claims Period" is defined as the time period May 1, 2016, until May 1, 2018.

4. **OPT-IN PERIOD**: The "Opt-In Period" shall mean the period of time lasting for 30-days starting from the date upon which Notice is received by each Putative Subsequent Class Member. Putative Subsequent Class Members' Claim Forms must have been postmarked on or before the end of this period in order for them to qualify as Subsequent Class Members.

5. **CLAIMS ADMINISTRATION PERIOD**: The "Claims Administration Period" shall be the time beyond the Opt-In Period during which time the Claims Administrator should complete all administration of claims.

6. **WIND DOWN PERIOD:** The "Wind Down Period" shall mean the period of time from the Effective Date through and including both the Opt-In Period and the Claims Administration Period.

D. *Settlement Terms*

1. **SETTLEMENT:** The term "Settlement" refers to the terms, conditions, and agreements contained in this Agreement and all actions necessary to implement and obtain approval of the Settlement.

2. **GROSS SETTLEMENT FUND:** The term "Gross Settlement Fund" refers to the maximum payment J.W. Logistics will make under the Settlement to Plaintiff, Consent Plaintiffs, and Subsequent Class Members including attorneys' fees. The total Settlement agreed upon is $725,000, and after attorneys' fees, costs, and the class representative award, the Net Settlement Fund amount sits at $517,500.

3. **NET SETTLEMENT FUND:** After deduction of attorneys' fees and expenses, and the Plaintiff's service award agreed upon at $6,900, the Net Settlement Fund available for distribution is $517,500. Plaintiff acknowledges and agrees that J.W. Logistics will only be required to pay amounts actually claimed by class members who timely comply with the requirements set forth in an agreed upon notice and claim form. (The total settlement funds paid to all Plaintiffs and class members cannot exceed $517,500).

4. **ATTORNEYS' FEES:** The term "Attorneys' Fees" refers to the total amount to be paid to Plaintiffs' Counsel for representing the Plaintiff, Consent Plaintiffs and the Subsequent Class Members. The amount of Attorneys' Fees is $200,000 representing 27.586207-percent of the Gross Settlement, plus $600 in costs and expenses.

5. **ALLOCATED SHARE:** The term "Allocated Share" refers to the portion of the Net Settlement Fund calculated according to the Formula which the Plaintiff, the Consent Plaintiffs, and a Subsequent Class Member is entitled to receive if he/she timely files a valid Claim Form and completes the appropriate wage-and-hour release.

6. **FORMULA:** Each Allocated Share will be calculated using the following steps (the "Formula"):

    a. *Step One:* J.W. Logistics will submit to the Claims Administrator the overtime compensation owed to potentially impacted Employees.

    b. *Step Two:* The total overtime compensation available to the claimants is $517,500. That is the total Settlement $725,000 minus $200,000 in attorneys' fees with another $600 subtracted for costs and fees and $6,900 subtracted for Plaintiff Tinisia Venable's service award.

    c. *Step Three:* The gross compensation for each dispatcher, dispatch supervisor, and logistics supervisor employed by J.W. Logistics, LLC, or J.W. Logistics Operations, LLC, from May 1, 2016, through May 1, 2018, was calculated and totaled. To account for the agreed-upon liquidated damages for dispatchers and dispatch supervisors, the respective gross salaries were doubled. No liquidated damages will be paid to logistics supervisors, so their respective gross salaries were not double for damages calculations.

    d. *Step Four:* The collective gross compensation (including the liquidated damages for dispatchers and dispatch supervisors) were then totaled. The Net Settlement Fund ($517,500) was then divided by the collective gross compensation in order to yield an estimated value or ratio of overtime compensation. That value amounted to around .035871846.

    e. *Step Five:* To finally calculate each dispatcher's, dispatch supervisor's, and logistics supervisor's damages, the .035871846 ratio was multiplied to each person's respective gross incomes (including the liquidated damages for dispatchers and dispatcher supervisors). The resulting number will serve as Plaintiff's, Consent Plaintiffs', and Putative Subsequent Class Members' respective damages. And when adding Plaintiff's, Consent Plaintiffs' and Putative Subsequent Class Members' potential damages, the total scaled damages equals the Net Settlement Fund ($517,500).

    f. *Step Six:* J.W. Logistics will only be required to pay amounts actually claimed by Subsequent Class Members who comply with the requirements set forth in an agreed upon notice. The total amount J.W. Logistics owes can not exceed $517,500.

7. **NOTICE:** The term "Notice" refers to the Notice of Collective Action Settlement that shall be mailed to each Putative Subsequent Class Member to explain the terms of the Settlement and the claims process. The Notice shall include a neutral description of the Lawsuit and a generic statement that a claim may be filed by completing a Claim Form. The Notice shall disclose the contact information for Counsel for the Parties and the Claims Administrator.

8. **CLAIM FORM:** The term "Claim Form" refers to the Declaration of Consent to Opt-In and Participate in Settlement and Claims Administration forms that shall be mailed to each Putative Subsequent Class Member that each Putative Subsequent Class Member must complete in full and timely return to the Claims Administrator to become a Subsequent Class Member. In the event a Subsequent Class Member disputes the information on the Claim Form, J.W. Logistics' records will be presumed to be correct, but that presumption may be rebutted by the Subsequent Class Member's production of documentation rebutting that presumption. The Claims Administrator will resolve all such disputes, and the Claims Administrator's resolution will be binding on all parties.

9. **CLAIMS ADMINISTRATOR:** The term "Claims Administrator" refers to the third-party claims administrator to be selected and employed by J.W. Logistics. The Claims Administrator's fees and expenses will be paid by J.W. Logistics (except to the extent listed below) and are not included in the Net Settlement Fund and thus, the anticipated related administrator's fees and charges do not reduce the wages agreed to be paid in this settlement.

### III. PAYMENT AND CONSIDERATION:

#### A. PLAINTIFF AND THE CONSENT PLAINTIFFS

1. Plaintiff and Plaintiffs' Counsel acknowledge and agree that each Consent Plaintiff filed a "Consent to Join" the Lawsuit. In that Consent, Plaintiff and Plaintiffs' Counsel acknowledge and agree that Consent Plaintiffs authorized and designated Plaintiff as their respective agent "to make decisions on [their] behalf concerning the litigation, to negotiate and/or settle any and all wage claims" that each respective Consent Plaintiff has against" J.W. Logistics.

2. In consideration for the promises and covenants contained in this Agreement, Plaintiff shall receive her respective overtime compensation of $3,101.99 plus a service award of $6,900.

3. In consideration for the promises and covenants contained in this Agreement, Consent Plaintiffs shall receive their respectively owed overtime compensation after properly completing a Claim Form.

4. The payment to Plaintiff and each Consent Plaintiff that is or was a dispatcher or dispatcher supervisor will be equally divided between back pay, less standard deductions (reported via IRS Form W-2) and liquidated damages paid without deductions (reported via IRS Form 1099). Each Consent Plaintiff that is or was a logistics supervisor will be paid back pay, less standard deductions (reported via IRS

Form W-2). J.W. Logistics or the Claims Administrator will issue Plaintiffs' Counsel two checks for each Consent Plaintiff – one reflecting the back pay portion and one reflecting the liquidated damages portion – no later than 45 days after each Claim Form has been properly submitted. Plaintiffs' Counsel shall submit to J.W. Logistics' Counsel an IRS W-9 Form for Plaintiff on the Date of Execution.

5. Plaintiff and the Consent Plaintiffs agree that the Gross Settlement Fund and Net Settlement Fund constitute good, valid, and sufficient consideration for this Settlement. Plaintiff and the Consent Plaintiffs further agree that, upon receipt of their respective portion of the Net Settlement Fund, they have been properly paid for any and all claims under the FLSA and any and all wage and hour claims or causes of action of whatever kind or nature, whether known or unknown, that could have been raised in the Lawsuit or by any other means against one or more of the Employers based on any acts, omissions, transactions or occurrences whatsoever from the date of the beginning of the world to the Effective Date of this Agreement.

6. Plaintiff and the Consent Plaintiffs also acknowledge and agree that their respective portion of the Net Settlement Fund constitute the entire amount of money or other benefits that Plaintiff and the Consent Plaintiffs shall each receive in exchange for their full, final, and complete release of all their asserted or unasserted wage and hour claims against J.W. Logistics. In addition, Plaintiff and the Consent Plaintiffs acknowledge and agree that their respective portion of the Net Settlement Fund constitutes consideration to which they would not otherwise have been entitled and is being paid in exchange for execution of this Agreement.

7. Plaintiff and the Consent Plaintiffs acknowledge that the amount designated as back pay is subject to all applicable local, state, and federal withholdings, which will be deducted based on the information then on file with the Employers. The corporate Employers will be responsible for paying the Employers' portion of any and all applicable payroll taxes relating to the respective portion of the Net Settlement Fund designated as back pay. Plaintiff and the Consent Plaintiffs agree that they will be responsible for any and all additional taxes, interest, or penalties that are payable or assessed in connection with payment of the amount designated as back pay. Plaintiff and the Consent Plaintiffs agree to indemnify and hold J.W. Logistics harmless with respect to any such additional taxes, interest, or penalties.

8. The Parties acknowledge that for the amount designated as liquidated damages, the Plaintiff and the Consent Plaintiffs are responsible for any tax obligations that they may owe arising from the disbursement. J.W. Logistics will not assume responsibility for any tax obligations, interest, or penalties arising from the liquidated damages disbursement. Plaintiff and the Consent Plaintiffs agree to indemnify and hold J.W. Logistics harmless with respect to such taxes, interest, or penalties.

B. **ATTORNEYS' FEES & COSTS**

1. In consideration for the promises and covenants contained in this Agreement, Plaintiffs' Counsel shall receive the total sum of $200,000 for Attorneys' Fees and $600 as full and final payment of any fees and costs for services rendered in

connection with their representation of Plaintiff, the Consent Plaintiffs, and the Putative Subsequent Class Members. The parties separately negotiated the amount of the attorney's fees, which is the equivalent of 27.586207-percent of the Gross Settlement as to which J.W. Logistics agrees is within the range of reasonable attorney's fees in similar cases and does not oppose Plaintiffs request for Court approval of this sum. The parties understand the Court has to approve the amount of the attorney's fees, and J.W. Logistics

2. J.W. Logistics shall issue Plaintiffs' Counsel a single check in the amount of $200,600 for the Attorneys' Fees and costs no later than 14 days after the Effective Date. Plaintiffs' Counsel shall submit to J.W. Logistics' Counsel an IRS W-9 Form for their firm on the Date of Execution.

3. Plaintiff, the Consent Plaintiffs, and Plaintiffs' Counsel agree that the Attorneys' Fees constitute the full extent of all fees and costs actually incurred in connection with services rendered for Plaintiff, the Consent Plaintiffs, and the Putative Subsequent Class Members, and that they will not seek a further award of attorneys' fees, expenses, or costs for services rendered for Plaintiff, the Consent Plaintiffs, and Putative Subsequent Class Members.

4. The Attorneys' Fees are paid in full and complete settlement of all attorneys' fees, costs and expenses to be paid by J.W. Logistics to Plaintiff's, the Consent Plaintiffs', Plaintiffs' Counsel, and the Putative Subsequent Class Members.

5. Plaintiffs' Counsel is responsible for any tax obligations that they may owe arising from the disbursement of the Attorneys' Fees. J.W. Logistics will not assume responsibility for any tax obligations, interest, or penalties arising from such disbursement. Plaintiffs' Counsel agrees to indemnify and hold J.W. Logistics harmless with respect to such taxes, interest, or penalties related to payment of the Attorneys' Fees.

C. SUBSEQUENT CLASS MEMBER CLAIMS

1. Only Subsequent Class Members who execute the Claim Form (attached as Exhibit 1) will be entitled to receive an Allocated Share.

2. The amount paid for each Subsequent Class Member's Allocated Share, who is or was a dispatcher or dispatch supervisor, shall be equally divided between back pay, less standard deductions (reported via IRS Form W-2) and liquidated damages paid without deductions (reported via IRS Form 1099). The amount paid for each Subsequent Class Member's Allocated Share, who is or was a logistics supervisor, shall be paid as back pay, less standard deductions (reported via IRS Form W-2). The Subsequent Class Members are responsible for any tax obligations that they may owe arising from such disbursement. J.W. Logistics will not assume responsibility for any tax obligations whatsoever arising from such disbursement. Each Subsequent Class Member will be required to indemnify and hold J.W. Logistics harmless with respect to such taxes, interest, or penalties.

The Claims Administrator shall be responsible for printing and mailing the Notice and Claim Form to the Class Members; making the payments in accordance with the terms and provisions of this Agreement; calculating and paying any and all payroll tax deductions to be withheld from Class Member payouts as required under this Agreement and applicable law; keeping track of and maintaining an accurate record of requests for exclusion from the Class; mailing Class Member payout checks to Class Members; and for such other tasks as the Parties mutually agree or the Court orders the Claims Administrator to perform. The Parties each represent they do not have any financial interest in the Claims Administrator or otherwise have a relationship with the Claims Administrator that could create a conflict of interest.

3. With respect to administration of the Subsequent Class Member claims, the Parties will defer to the Claims Administrator regarding the specifics of the manner in which it performs the administration, understanding that the Claims Administrator is in the best position to identify the most effective methodology for the same given its past experience and knowledge concerning industry standards. It is the Parties' intent to submit the following proposed guidelines to the Claims Administrator concerning its administration, understanding that the Claims Administrator will make the final decision regarding whether such guidelines are feasible and/or the best industry standard practices:

   a. Within 21 calendar days after the Effective Date, J.W. Logistics will provide the Claims Administrator the names, last known addresses, and the total amount owed to each Putative Subsequent Class Member. The Claims Administrator will keep this information confidential and use it only for the purposes described herein.

   b. After receiving the above-described contact information from J.W. Logistics, the final Notice, and the final Claim Form, the Claims Administrator will commence the mailing of the Notices and Claim Forms, to the Putative Class Members.

   c. In order to claim his/her Allocated Share of the Net Settlement Fund, a Subsequent Class Member must accurately complete and sign the Claim Form and submit the form and appropriate identification directly to the Claims Administrator at the address indicated on the Claim Form during the Opt-In Period. No Claim Forms will be honored if postmarked outside the Opt-In Period.

   d. In the event a Claim Form is submitted timely but is deficient in one or more aspects, the Claims Administrator shall return the Claim Form to the claimant with a letter explaining the deficiencies and the claimant shall have 14 calendar days from the date of the deficiency notice to correct the deficiencies and resubmit the Claim Form. The resubmitted Claim Form must be postmarked within 14 calendar days of the date of the deficiency notice or from the deadline for filing claims, whichever is later, to be considered timely. No claimant will be provided a second notice of deficiency, except upon a showing of good cause.

e. In the event of returned or non-deliverable Notices, the Claims Administrator will provide a report of the same, if requested by counsel or the Court. The costs of any such request by Plaintiffs' Counsel shall be incurred solely by Plaintiffs' Counsel. The costs of any such request by the Court or J.W. Logistics shall be incurred by J.W. Logistics.

f. The Claims Administrator shall review the returned Claim Forms and apply the calculations of Allocated Shares pursuant to the Formula. It shall then report such information to counsel for the Parties within 60 days.

g. J.W. Logistics will begin paying the Subsequent Class Members within 30 days of the Claims Administrator informing the Parties of the amount of each Allocated Share. J.W. Logistics will pay or cause to the Claims Administrator to pay the Subsequent Class Members within 30 days of the date the Claims Administrator informs the Parties of the amount of each claimed Allocated Share.

h. Claims Administrator shall provide a declaration of due diligence and proof of mailing with regard to the mailing of Notices, if requested by counsel or the Court. The costs of any such request by Plaintiffs' Counsel shall be incurred solely by Plaintiffs' Counsel. The costs of any such request by the Court or J.W. Logistics shall be incurred by J.W. Logistics.

i. Upon completion of the mailing of checks for the Allocated Shares, J.W. Logistics will provide Plaintiff's Counsel with a report listing the amount of all payments made to each Subsequent Class Member. A declaration of payment may also be filed with the Court.

j. Subsequent Class Members will have the time allowed under applicable banking laws to cash their Allocated Share checks. If any Subsequent Class Member fails to cash the Allocated Share check within this time period that Subsequent Class Member will be deemed to have waived irrevocably any right in or claim to the Settlement Fund and Net Settlement Fund and such funds shall be returned to J.W. Logistics.

## IV. RELEASES

### A. *Wage and Hour Release by Plaintiff and Consent Plaintiffs:*

1. For and in consideration of the Settlement Fund and Net Settlement Fund and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Plaintiff and the Consent Plaintiffs knowingly and voluntarily release and forever discharge J.W. Logistics from any and all wage and hour claims, including any causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown which any of the Plaintiff and the Consent Plaintiffs ever had or now has against J.W. Logistics, based on any acts, omissions, transactions or occurrences whatsoever from the date of the beginning of the world to the Effective Date of this Agreement, including those claims:

    a. asserted in the Lawsuit; and

    b. arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* or any other law governing the payment of wages.

2. Further, with respect to the claims that Plaintiff and the Consent Plaintiffs are waiving herein, Plaintiff and the Consent Plaintiffs understand, acknowledge, and agree that they are waiving the right to receive money or any other relief in any wage and hour action instituted on their behalf (individually or on behalf of all those similarly situated) by any other person, entity, or government agency.

3. Plaintiff and the Consent Plaintiffs understand, acknowledge, and agree that this Agreement may be raised and/or pled by any of J.W. Logistics as a complete defense or bar to recovery by Plaintiff and the Consent Plaintiffs in any wage and hour action initiated by Plaintiff or the Consent Plaintiffs or on their behalf (individually or on behalf of all those similarly situated) against any of J.W. Logistics in any forum, including charges filed by Plaintiff or the Consent Plaintiffs or on their behalf (individually or on behalf of all those similarly situated) with an administrative agency including, but not limited to, the Georgia Department of Labor, the U.S. Department of Labor, and/or any other federal, state, or local agency related to acts occurring up to and including the Effective Date.

4. Plaintiff and the Consent Plaintiffs acknowledge and agree that the Lawsuit will be dismissed with prejudice, and that they shall take no further action with respect to the Lawsuit.

5. Plaintiff and the Consent Plaintiffs further agree not to voluntarily participate in or encourage other wage and hour proceedings or litigation against any of J.W. Logistics and to participate in such proceedings or litigation only if they are compelled to do so by subpoena or other court order. Plaintiff and the Consent Plaintiffs agree to notify the Employers within a reasonable period of time after they have learned of such subpoena or other court order. "Reasonable period of time" means sufficiently in advance of the date on which Plaintiff and the Consent Plaintiffs must respond to such subpoena or other court order that the Employers can intervene to challenge or quash such subpoena or other court order.

6. Plaintiff and the Consent Plaintiffs further agree that neither they nor anyone on their behalf will file or pursue any wage and hour claims, grievances, charges or lawsuits against the Employers for any acts or omissions occurring prior to the Effective Date.

7. As a further consideration and inducement for this Agreement, Plaintiff and the Consent Plaintiffs agree and represent that they have not filed, participated in, or otherwise pursued any wage and hour charges, complaints or claims of any nature that are in any way pending against any of the Employers with any local, state or federal government agency, court or arbitration tribunal other than the Lawsuit. If any government agency or court or other tribunal assumes jurisdiction of any charge, complaint, cause of action or claim covered by this Agreement against any of the Employers, on behalf of or related to Plaintiff or any of the Consent Plaintiffs, they

will take reasonable actions to ensure that such government agency, court, or tribunal withdraws from and/or dismisses the matter, with prejudice, including, but not limited to, requesting such action by such agency or court.

8. It is further understood and agreed that this Agreement and the payments made hereunder constitute full and final satisfaction of all wage and hour claims of every nature, direct or indirect, against all persons, firms, or corporations, including those who are or might be held to be joint and/or successor employers, as to Plaintiff and the Consent Plaintiffs, J.W. Logistics and/or any of the parties released hereby, as well as those to whom any of the parties released are, or may be held to be, liable by way of contribution or indemnity for the payment of all or any part of any claim arising out of, or directly or indirectly related to, the claims set forth in this Agreement.

9. This Release is executed with the full knowledge and understanding on the part of Plaintiff and the Consent Plaintiffs that there may be more serious consequences, damages or injuries, which are not now known, and that any benefits conferred herein to Plaintiff and the Consent Plaintiffs in consideration of this Release are accepted as final. Plaintiff and the Consent Plaintiffs further agree and represent that it is within Plaintiff's and the Consent Plaintiffs' contemplation that Plaintiff and the Consent Plaintiffs may have claims against J.W. Logistics of which, at the time of the execution of this Release, Plaintiff and the Consent Plaintiffs have no knowledge or suspicion, but Plaintiff and the Consent Plaintiffs agree and represent, without affecting the generality of the foregoing paragraphs, that this Release extends to all wage and hour claims in any way based upon, connected with or related to the matters described herein, whether or not known, claimed or suspected by Plaintiff and the Consent Plaintiffs.

10. Plaintiff and the Consent Plaintiffs acknowledge that they have had reasonable and sufficient time to consider whether or not Plaintiff and the Consent Plaintiffs desire to enter into this Agreement. It is understood and agreed that this Agreement is executed by Plaintiff, and the Plaintiff acting as the authorized and designated agent on behalf of the Consent Plaintiffs, knowingly and voluntarily and is not based upon any representations or statements of any kind by any person as to the merits, legal liabilities or value of Plaintiff's and the Consent Plaintiffs' claims. The Parties also acknowledge that no promise or inducement has been offered or made except as set forth in this Agreement. Plaintiff and the Consent Plaintiffs further acknowledge that consideration for this Agreement consists of financial payments and benefits to which the Consent Plaintiffs otherwise have no legal entitlement.

11. As part of this consideration for the conditions of the settlement as set forth above, Plaintiff and the Consent Plaintiffs expressly warrant and represent that (a) they are legally competent to execute this Agreement; (b) Plaintiff and the Consent Plaintiffs have not assigned, pledged, or otherwise in any manner whatsoever sold or transferred, either by instrument in writing or otherwise, any claim, cause of action, or other legal right of whatever kind and nature, which Plaintiff and the Consent Plaintiffs have or may have by reason of the facts and circumstances giving rise to the instant dispute or any matters arising out of or relating thereto; and (c) there are no

outstanding subrogation claims or liens of any type or character, by reason of the incident detailed herein.

12. It is understood that Plaintiff and the Consent Plaintiffs have the right and opportunity to consult fully with legal counsel or other advisor prior to signing this Agreement and is advised to consult with legal counsel prior to signing this Agreement. Plaintiff and the Plaintiff acting as the authorized and designated agent on behalf of the Consent Plaintiffs also acknowledge that before signing this Agreement, Plaintiff and the Plaintiff Consent Plaintiffs have read and fully understand each paragraph thereof.

13. Plaintiff and the Consent Plaintiffs acknowledge that, upon the Effective Date of this Agreement, Plaintiff and the Consent Plaintiffs will fully and irrevocably release any and all claims the Consent Plaintiffs may have against J.W. Logistics as specified in this Agreement and the Releases.

B. *Wage and Hour Release by Consent Plaintiffs and Subsequent Class Members:* Each Claim Form will include a release substantially similar to the one in the above section to be executed by Consent Plaintiffs and the Subsequent Class Members.

V. *Dismissal of Lawsuit:*

A. Within 5 days following the Date of Execution, Counsel for the Parties shall file a Joint Motion for Approval of Settlement and Authorizing Notice of Settlement to the Putative Class. Upon approval, Plaintiff and Consent Plaintiffs will dismiss this action with prejudice.

B. If the Court does not approve the Settlement, then this Settlement will become null and void (unless the Parties mutually agree otherwise) and the proceedings associated with the Lawsuit will resume as if these papers had never been filed, and the rights and legal positions of all Parties shall be reinstated and restored as they existed March 28, 2018. However, if or any reason the court does not approve the settlement, the parties agree to work together in good faith, and to use their best efforts to address any issues or concerns of the court, and submit an amended or revised settlement agreement within 30 days for subsequent approval.

VI. MISCELLANEOUS:

A. *Governing Law & Jurisdiction.* This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The Parties agree that any disputes related to this Agreement shall be subject to the jurisdiction of the State of Georgia and any proceedings raised shall take place in any Georgia court in which jurisdiction and venue are proper.

B. *Entire Agreement.* This Agreement constitutes the entire agreement between the Parties pertaining to those subjects contained in it and supersedes all prior and contemporaneous agreements, representations and understandings.

C. *Severability.* Each provision of this Agreement is intended to be severable. In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the

invalid portion shall be stricken and all other obligations shall remain valid and mutually binding on the Parties and not be affected thereby.

D. *Good Faith*. The Parties expressly agree to execute and abide by the terms of this Agreement in good faith.

E. *The Parties' Authority*: The signatories hereto hereby represent that they are fully authorized to enter into this Settlement and bind the Parties hereto to the terms and conditions hereof.

F. *Mutual Full Cooperation*: The Parties agree that the Settlement is fair and reasonable and will so represent to the Court. The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement, including but not limited to, executing of such documents and taking such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties to this Settlement shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary or ordered by the Court, or otherwise, to effectuate this Settlement and the terms set forth herein. As soon as practicable after execution of this Settlement, Counsel for the Parties will take all necessary steps to secure the Court's approval of this Settlement.

G. *No Prior Assignments*: The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

H. *Construction*: The Parties hereto agree that the terms and conditions of this Settlement are the result of lengthy, arms-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Settlement.

I. *Captions And Interpretations*: Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision hereof.

J. *Modification*: This Settlement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the parties hereto.

K. *Binding On Assigns*: This Settlement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

L. *Plaintiffs' Counsel Signatories*: It is agreed that because the Subsequent Class Members are numerous, it is impossible or impractical to have each member execute this Agreement and the Settlement. Plaintiffs' Counsel, Plaintiff, and the Plaintiff acting as the authorized and designated agent on behalf of the Consent Plaintiffs, shall sign this

Settlement Agreement - *Tinisia Venable et al. v. J.W. Logistics, LLC, and J.W. Logistics Operations, LLC*

Agreement and acknowledge the Settlement on behalf of Plaintiff, the Consent Plaintiffs, and the Subsequent Class Members and such shall have the same force and effect as if this Agreement and Settlement were executed by each Consent Plaintiff and Subsequent Class Member. The Notice shall advise all putative Subsequent Class Members of the binding nature of the Agreement.

**M.** *Counterparts***:**   This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties, subject to Court Approval.

**N.** *No Appeals***:**   The Parties waive all appeals from the Court's final approval of the Settlement unless the Court materially modifies the terms of Settlement. The Parties agree that the joint motion for approval is for purposes of the Settlement only and if, for any reason, the Settlement is not approved, the motion will have no force or effect and will be immediately revoked.

IN AGREEMENT HERETO, the Parties set their hand and seal.


~ Signatures to Appear On Next Page ~

Settlement Agreement - *Tinisia Venable et al. v. J.W. Logistics, LLC, and J.W. Logistics Operations, LLC*

**Named Plaintiff**

Jul 17, 2018
_____, 2018

*tinisia venable*
tinisia venable (Jul 17, 2018)
_____
Tinisia Venable

**Named Plaintiff as agent for Consent Plaintiffs**

Jul 17, 2018
_____, 2018

*tinisia venable*
tinisia venable (Jul 17, 2018)
_____
Tinisia Venable

**Plaintiffs' Counsel**

July 19 _____, 2018

_____
Mitchell Feldman
Feldman Williams, PLLC

[signatures continue on next page]

Settlement Agreement - *Tinisia Venable et al. v. J.W. Logistics, LLC, and J.W. Logistics Operations, LLC*

**J.W. Logistics, LLC**

July 19, 2018

_____
James H Wicker III
President & CEO

**J.W. Logistics Operations, LLC**

July 19, 2018

_____
James H Wicker III
President & CEO

**Defense Counsel**

_____, 2018

_____
Chad Shultz
Gordon & Rees Scully Mansukani

Settlement Agreement - *Tinisia Venable et al. v. J.W. Logistics, LLC, and J.W. Logistics Operations, LLC*

**J.W. Logistics, LLC**

_____, 2018

_____
_____
_____

**J.W. Logistics Operations, LLC**

_____, 2018

_____
_____
_____

**Defense Counsel**

July 13, 2018

*/s/ Chad Shultz*
Chad Shultz
Gordon & Rees Scully Mansukani